IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| DONALD C. GRIFFITH | : | CIVIL ACTION |
| v. | | |
| LABORERS INTERNATIONAL UNION OF NORTH AMERICA, LOCAL NO. 1174 | : | NO.10-6181 |
| | : | |

<u>MEMORANDUM</u>

Tucker, J.                                                            July ___, 2012

Presently before the Court is Defendant's Motion for Summary Judgment (Doc. 17), Plaintiff's Response (Docs. 20, 21), and Defendant's Reply (Docs. 24, 25, 26). Upon consideration of the parties' motions with exhibits and declarations, the Court will grant Defendant's Motion for Summary Judgment.

**I.**                            **BACKGROUND**

This case arises out of alleged age discrimination. Plaintiff, Donald C. Griffith ("Griffith"), brings this action against Defendant Laborers International Union of North America, Local No. 1174 ("Local 1174", or the "Union"), alleging that Defendant violated both the Age Discrimination in Employment Act (the "ADEA"), 29 U.S.C. § 621 <u>et seq.</u> and the Pennsylvania Human Relations Act, 43 P.S. § 951 <u>et seq.</u> (the "PHRA") (Compl. ¶¶ 24, 33, 35.)[1]

**A. <u>Plaintiff Griffith's Membership History with Local 1174</u>**

Plaintiff, a Pennsylvania resident, was born in 1953. At the time of the incidents complained of, Plaintiff was approximately fifty-three years of age.

---

[1] All administrative remedies required prior to the filing of this lawsuit have been fulfilled. With respect to Plaintiff's ADEA claim, the United States Equal Employment Opportunity Commission issued Notice of Right to Sue ("Notice"), and Plaintiff initiated this action within 90 days of receipt of said Notice. Additionally, with respect to Plaintiff's PHRA claim, on February 20, 2009, Plaintiff filed a Complaint with the Pennsylvania Human Relations Commission. Plaintiff's initial Complaint was filed with the Court of Common Pleas, Lehigh County on October 29, 2010. The exhaustion of administrative remedies is undisputed by the parties in this matter.

Plaintiff initially became a member of Local 1174 more than ten (10) years ago. (Compl. ¶ 3.) Plaintiff regularly paid his monthly dues and was qualified for membership with Defendant. (Compl. ¶¶ 4-5.) Over time, Plaintiff noticed that Defendant's available work dramatically decreased. Therefore, Plaintiff returned to his former position as a full-time laborer at another company. (Compl. ¶¶ 6-7.) Plaintiff maintained his membership with Defendant while working for another employer. (Compl. ¶ 8.)

In or around May 2007, Plaintiff put his name on the referral list ("the List") for the Defendant. (Compl. ¶ 9.) Plaintiff avers that ordinarily, Defendant issued job assignments based on the order that the names appear on the List. (Compl. ¶ 10.) It is Plaintiff's belief that the placement of names on the Defendant's List was determined by availability to do the job and when an individual placed his name on the List. (Compl. ¶11.) Sometime in spring of 2007 Defendant added Plaintiff's name to the referral List for job assignments. (Compl. ¶12.)

Plaintiff requested a copy of the List from Defendant's Business Manager, James Hartman. (Compl. ¶12.) On the List, Plaintiff's name appeared above other, younger workers. (Compl. ¶13.) Plaintiff avers that several workers with less availability and who were substantially younger than Plaintiff received more job assignments despite having lower placement on the List. (Compl. ¶14.) As a result, the majority of younger employees were given the possibility of job assignments before Plaintiff was given the same opportunities. (Compl. ¶15.)

Allegedly, Plaintiff's position on the List was bypassed and job assignments were given to younger workers, in violation of Defendant's own work rules for the List. (Compl. ¶16.) Plaintiff believes that Defendant showed a preference toward referring younger workers over

himself in violation of the Age Discrimination in Employment Act and Pennsylvania Human Relations Act.[2]

**B.  Defendant Local 1174's Referral Procedures**

Although as a general rule, referrals to job assignments were based on the order in which names appeared on Defendant's out-of-work lists, Defendant maintains that job assignments were issued in accordance with its full Referral Procedure, which allowed for certain exceptions. (Ans. ¶10.)  Defendant's written Referral Procedure, made available to all members, set forth the procedures for referral of applicants seeking job referrals.  Defendant avers that the Referral Procedure was followed with respect to all referrals for all applicants, including Plaintiff Griffith, during all periods relevant to this action.  Id.

Defendant's Referral Procedure states, in relevant part:

> c.  Discretion of Employers: Applicants for referral must recognize that the employer shall be the sole judge of the number of employees required and shall have the right to reject on a lawful, non-discriminatory basis any person who has been referred by Local 1174.
> . . . .
> 4.  Referral Procedure:
> . . . .
> > b.  Local 1174 shall maintain an out-of-work list(s) within a Zone, for job referral registration on the basis of the Groups listed below.  Each applicant shall be placed on the list(s) in the highest priority Group for which he or she qualifies.
> > > i.  *Group A:* All applicants who have four or more years' experience in the Trade, and who have been employed in the Geographical Area for a period of at least one year in the last three years after their

---

[2] Plaintiff maintains only his disparate treatment claim of age discrimination under the ADEA and PHRA, as he withdrew his disparate impact claim. (Pl. Resp., p. 1).

        Seniority Date under a collective bargaining agreement between Local 1174 and a signatory employer.
- ii. *Group B:* All applicants who have two or more years . . . .
- iii. *Group C*: All applicants who are parties to an Apprenticeship Agreement with the Laborers' District Council of Eastern Pennsylvania Joint Apprenticeship and Training Committee which has been approved by the Pennsylvania Apprenticeship and Training Council.
- iv. *Group D*: All other qualified applicants

. . . .

- d. When an employer advises the Business Manager of the need to employ apprentices in a Requested Zone, the Business Manager shall refer applicants in Group C in the Requested Zone in the order set forth in Paragraph 4.f[g]. When all apprentices in the Requested Zone have been referred, the Business Manager shall refer apprentices on the list in the other Zone.
- g. Applicants whose names appear on the Group C list shall be listed in the order in which they registered their availability for referral. Whenever an employer requests an apprentice, the Business Manager shall refer the first applicant on the Group C list, unless the employer requests an apprentice by apprenticeship year. If an employer requests by apprenticeship year, the Business Manager shall refer the first applicant on the Group C list within the apprenticeship year.

. . . .

- l. Any applicant who refuses or is unavailable for two consecutive referrals shall be moved to the bottom of the out-of-work list(s). An applicant must be unavailable on two separate days before he/she can be moved to the bottom of the out-of-work list(s). An applicant will be considered unavailable if he or she cannot be reached after one phone call has been placed to the telephone number provided by the applicant. . . .
- m. Local 1174 will make referral calls during the time frame of 4:00 p.m. to 7:00 p.m. on Monday through Friday. Applicants are required to be at the number on file with Local 1174 during these designated hours, waiting for the

       call.  Local 1174 is required to make a single call, lasting no less than ten rings, to each qualified applicant in order. Referrals made outside the designated hours are also made in order, however applicants who are unavailable or refuse such referrals are not penalized or designated "unavailable."

  n. When Local 1174 determines that the applicant who is first on the out-of-work list(s) cannot be referred because of refusal, unavailability or lack of required licenses, certifications or skills, Local 1174 shall then refer the next applicant on the out-of-work list(s) who is willing, available and has the required licenses, certifications or skills.

(Ans., Ex. A., Laborers' Local 1174 Referral Procedure).

  Starting May 2007, Plaintiff Griffith was placed as an apprentice on the out-of-work Group C referral list.  Plaintiff's placement on the Group C list was based on his skill level and experience, as Plaintiff had yet to complete the remaining 832 hours of the training and experience required to qualify as a journeyman.  (Pl. Affidavit ¶13).  Plaintiff Griffith was contacted by Defendant several times via telephone for job referrals during the period that he alleges Defendant discriminated against him in favor of younger members listed on the Group C list.  However, pursuant to Defendant's Referral Procedure, Griffith missed eight such referral calls because he did not answer the phone. (Def. Resp. ¶42).

  Plaintiff Griffith admits that his present claims under the ADEA and PHRA were based solely on the actions taken by Defendant concerning its Group C list during the time that Plaintiff's name appeared on the list.

## II. STANDARD OF REVIEW

  Summary judgment is appropriate where the moving party establishes that "there is no genuine issue as to any material fact and that [it] is entitled to a judgment as a matter of

law." Fed R. Civ P. 56(c). See Levy v. Sterling Holding Co., LLC, 544 F.3d 493, 501 (3d Cir. 2008). A factual dispute between the parties will not defeat a motion for summary judgment unless it is both genuine and material. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); Dee v. Borough of Dunmore, 549 F.3d 225, 229 (3d Cir. 2008). A factual dispute is genuine if a reasonable jury could return a verdict for the non-movant, and it is material if, under the substantive law, it would affect the outcome of the suit. See Anderson, 477 U.S. at 248; Fakete v. Aetna, Inc., 308 F.3d 335, 337 (3d Cir. 2002).

The moving party must show that if the evidentiary material of record were reduced to admissible evidence in court, it would be insufficient to permit the non-moving party to carry its burden of proof. See Celotex v. Catrett, 477 U.S. 317, 327, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Once the moving party has carried its burden under Rule 56, "its opponent must do more than simply show that there is some metaphysical doubt as to the material facts." Scott v. Harris, 550 U.S. 372, 380, 127 S.Ct. 1769, 167 L.Ed.2d 686 (2007). Under Fed. R. Civ. P. 56(e), the opposing party must set forth specific facts showing a genuine issue for trial and may not rest upon the mere allegations or denials of its pleadings. See Martin v. Godwin, 499 F.3d 290, 295 (3d Cir. 2007).

At the summary judgment stage the court's function is not to weigh the evidence and determine the truth of the matter, but rather to determine whether there is a genuine issue for trial. See Anderson, 477 U.S. at 249; Jiminez v. All American Rathskeller, Inc., 503 F.3d 247, 253 (3d Cir. 2007). In doing so, the court must construe the facts and inferences in the light most favorable to the non-moving party. See Horsehead Indus., Inc. v. Paramount Communications, Inc., 258 F.3d 132 (3d Cir. 2001). The court must award summary judgment on all claims unless

the non-moving party shows through affidavits or admissible evidence that an issue of material fact remains. See, e.g., Love v. Rancocas Hosp., 270 F.Supp.2d 576, 579 (D.N.J. 2003); Koch Materials Co. v. Shore Slurry Seal, Inc., 205 F.Supp.2d 324, 330 (D.N.J. 2002).

### III.   DISCUSSION

The ADEA and PHRA claims set forth in Plaintiff's Complaint are subject to the same common law framework, as the Third Circuit has interpreted the PHRA interchangeably concerning age discrimination claims in the employment context.[3]  Thus, all analyses below that reference the ADEA are equally applicable to Plaintiff's PHRA Claims.

**A.  Plaintiff's Disparate Treatment Claim**

Defendant seeks summary judgment, pursuant to Fed R. Civ P. 56, and contends that Plaintiff's claim of age discrimination under the ADEA and the PHRA must fail because Plaintiff did not make out a prima facie case of discrimination.  The Court agrees, as discussed below.

In McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973), the United States Supreme Court established a burden shifting method of proof to be utilized in the analysis of employment discrimination claims, including allegations of age discrimination.  Although many Title VII and ADEA cases deal with an employer-employee dynamic, there are cases, similar to the case at bar, which apply the McDonnell Douglas burden shifting test to circumstances involving a labor union, its members, and its referral system.  See Williams v. Lehigh Valley Carpenters Union Local 600, 1992 WL 247291, at *4 (E.D.Pa. 1992), aff'd. 993 F.3d 880 (3d. Cir. 1993), cert.

---

[3] Hill v. Borough of Kutztown, 455 F.3d 225, 247 (3d Cir. 2006) (citing Kautz v. Met-Pro Corp., 412 F.3d 463, 466 n.1 (3d Cir. 2005)).

denied 510 U.S. 873 (1993).

The burden initially rests with the plaintiff to establish a prima facie case of discrimination. Id. at 802.  To establish a prima facie case of discriminatory discharge, the plaintiff must prove that: (1) he is a member of a protected class; (2) he was qualified for his position; (3) he suffered an adverse employment action; and (4) the adverse employment action gives rise to an inference of unlawful discrimination. Id; Roebuck v. Drexel University, 852 F.2d 715 (3d Cir. 1988).  A Plaintiff must "establish some causal nexus between his [or her] membership in a protected class" and the adverse employment decision.  Sarullo v. U.S. Postal Serv., 352 F.3d 789, 798 (3d Cir. 2003); Nelson v. Upsala Coll., 51 F.3d 383, 386 (3d Cir. 1995).

If the plaintiff establishes a prima facie case, the burden shifts to the employer defendant to articulate a legitimate, non-discriminatory reason for the adverse employment action. McDonnell Douglas, 411 U.S. at 802.  The defendant has a "relatively light burden" of articulating a legitimate non-discriminatory reason for a plaintiff's termination.  Fuentes v. Perskie, 32 F.3d 759, 763 (3d Cir. 1994).  A defendant "need not prove that the tendered reason actually motivated its behavior" but only that it may have.  Id.

Once the defendant employer sets out a legitimate non-discriminatory reason for the adverse employment action, the burden of persuasion shifts back to the plaintiff employee to show that the defendant's proffered reason is merely a pretext for discrimination. Fuentes, 32 F.3d at 763;  McDonnell Douglas, 411 U.S. at 804.  To prove pretext by the defendant employer, plaintiff must "present evidence contradicting the core facts put forward by the employer as the legitimate reason for its decision." Kautz v. Met-Pro Corp., 412 F.3d 463, 467 (3d Cir. 2005).

In the present matter, it is undisputed that Plaintiff Griffith satisfies the first two requirements of the McDonnell Douglas prima facie test.  Griffith was fifty-three years of age at the time during which he claims to have suffered age discrimination.  Thus, Griffith is a protected class member under the ADEA, which covers persons at least forty years of age.  29 U.S.C. § 631(a).  It is undisputed that Griffith was qualified to be listed on Defendant's Group C list, which consists of persons seeking employment who have not met the full qualifications required to be considered a journeyman.

The issue remains, however, whether Plaintiff Griffith suffered an adverse employment action due to Defendant's alleged failure to offer Plaintiff job referrals as required by the Defendant's Referral Procedure.

The Court finds that Plaintiff fails to meet the third prong of the McDonnell Douglas prima facie test, as a matter of law.  To fulfill the third prong, Plaintiff must establish that he suffered an adverse employment action.

Plaintiff provides no evidence proving that he suffered an adverse employment action, but generally avers that Plaintiff Griffith was "left out in the cold" because he received less work than younger persons in their twenties and thirties who were also on the Group C list. (Pl. Resp., p. 3).  The documents provided by Defendant clearly show adherence to its own Referral Procedure.  The Defendant's referral call logs tabulate the number of calls and referrals made per worker, and indicate that the highest number of calls and referrals were received by Plaintiff Griffith and another worker over forty years of age, Mr. Terebye.  Both Griffith and Mr. Terebey were older than many of the other workers on the Group C list. (Def. Apprentice Job Referrals from Out-of-Work Lists, May 1, 2007 to July 1, 2008).  Thus, it is clear that Plaintiff Griffith did

not suffer an adverse employment action, as he actually received more favorable treatment than his younger peers on the Group C list.

Defendant fulfilled its duty by adhering to its Referral Procedure, calling Plaintiff when it was his turn to receive referral calls based on his position on the Group C list, and dropping Plaintiff to the bottom of the Group C list when the calls resulted in no answer by Plaintiff. There is no indication that Plaintiff's failure to obtain referrals stemmed from any act or misconduct on the part of Defendant, thus no adverse employment action is present under these facts.

The fact that the higher number of calls to Plaintiff failed to result in the same number of actual jobs obtained by the Plaintiff in comparison to his younger counterparts, was no fault of the Defendant Union.  Plaintiff incorrectly asserts that the Defendant failed to provide proof that calls were made to the Plaintiff, and that there was no answer.  To the contrary, Defendant's Verizon phone records, which substantiate Defendant's internal referral call logs, prove that Plaintiff failed to answer eight calls placed by Defendant to Plaintiff's registered telephone number, in attempts to refer Plaintiff to employment during the time frame in question.  (Def. Apprentice Job Referrals from Out-of-Work Lists, May 1, 2007 to July 1, 2008).

The relevant portion of provision four of Defendant's Referral Procedure states that:

> l.      Any applicant who refuses or is unavailable for two consecutive referrals shall be moved to the bottom of the out-of-work list(s). An applicant must be unavailable on two separate days before he/she can be moved to the bottom of the out-of-work list(s).  An applicant will be considered unavailable if he or she cannot be reached after one phone call has been placed to the telephone number provided by the applicant. . . .
>
> m.    Local 1174 will make referral calls during the time frame of 4:00

      p.m. to 7:00 p.m. on Monday through Friday. Applicants are required to be at the number on file with Local 1174 during these designated hours, waiting for the call. Local 1174 is required to make a single call, lasting no less than ten rings, to each qualified applicant in order. Referrals made outside the designated hours are also made in order, however applicants who are unavailable or refuse such referrals are not penalized or designated "unavailable."

  n. When Local 1174 determines that the applicant who is first on the out-of-work list(s) cannot be referred because of refusal, unavailability or lack of required licenses, certifications or skills, Local 1174 shall then refer the next applicant on the out-of-work list(s) who is willing, available and has the required licenses, certifications or skills.

  In accordance with Defendant's Referral Procedure, each time Plaintiff failed to answer a call, his name dropped to the bottom of the Group C list, and the next available name as it appeared on the list was called until the referral was accepted. This was standard policy of Defendant, and cannot be construed as an adverse action taken against Plaintiff Griffith.

  Plaintiff, at his deposition, admitted that he was aware of Defendant's Referral Procedure, requiring laborers to be available to receive referral calls from 4:00 p.m. to 7:00 p.m., with the risk of being dropped to the bottom of their Group List if they did not answer twice, or refused referrals twice. Defendant admits, and Plaintiff substantiated at deposition, that on occasion, workers lower than Plaintiff on the Group C list, or on the Group D list, could receive referral calls instead of Plaintiff despite his higher position. However, these exceptions involved instances where Defendant followed the provision of its Referral Procedure which permits that the employer requesting a laborer to specify skill set, years of experience, or labor rate, giving Defendant flexibility to select a laborer out of the typical sequence of laborers listed. (Griffith Dep., pp. 29-31). Additionally, Defendant provided a detailed record of explanations for each

instance where a laborer was called who was listed below Plaintiff Griffith (Doc. 24, pp. 9 -17).

Thus, Plaintiff's blanket statements that he was promised by Defendant's Business Manager, Mr. Hartman, that work would be plentiful during the summer of 2007, and that younger workers obtained employment while Plaintiff obtained less referrals due to his age, are all unsupported by Defendant's records. (Pl. Stmt. of Undisputed Facts, ¶¶12, 20, 22, 48, 49). The record clearly shows during the time period in question, Local 1174 was simply following its Referral Procedure. There exists no evidence on the record, even in reviewing it in a light most favorable to Plaintiff, that Plaintiff suffered an adverse employment action.

For the reasons set forth above the Court finds that Plaintiff Griffith has failed to fulfill the requirements for a prima facie case of age discrimination.

## IV.   CONCLUSION

For the foregoing reasons, this Court finds that no reasonable jury, upon consideration of evidence presented by the Plaintiff, could find that Plaintiff Griffith suffered age discrimination at the hands of the Defendant. Thus, Defendant's motion for summary judgment is granted. An appropriate order follows.